# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| MARK UREDA, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>v.<br><br>VALENTINE & KEBARTAS, LLC and LVNV FUNDING, LLC,<br><br>    Defendants. | Case No.: 20-cv-1018<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Mark Ureda is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. 421.301(17), in that the debt arose from an agreement or series of agreements to defer payment.

6. Defendant Valentine & Kebartas, LLC ("V&K") is a foreign limited liability company with its principal offices located at 15 Union Street, No. 6, Lawrence, Massachusetts 01840.

7. V&K is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. V&K is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. V&K is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

10. Defendant LVNV Funding, LLC ("LVNV") is a foreign limited liability company with its principal place of business located at 6801 South Cimarron Road Suite 424-J, Las Vegas, Nevada. 15 South Main St., Greenville, South Carolina 29601.

11. LVNV is engaged in the business of a collection agency, in that it purchases and receives assignment of consumer debts that are in default at the time LVNV acquires them.

12. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

13. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 267-68 (3d Cir. 2019) ("As long as a business's

2

raison d'être is obtaining payment on the debts that it acquires, it is a debt collector. Who actually obtains the payment or how they do so is of no moment."); *Tepper v. Amos Fin., LLC,* 898 F.3d 364, 371 (3d Cir. 2018) ("In sum, Amos may be one tough gazookus when it attempts to collect the defaulted debts it has purchased, but when its conduct crosses the lines prescribed by the FDCPA, it opens itself up to the Act's penalties."); *Kurtzman v. Nationstar Mortg. LLC*, No. 16-17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 883 (N.D. Ill. 2018); *Long v. Pendrick Capital Partners II, LLC*, No. 17-cv-1955, 2019 U.S. Dist. LEXIS 44459, at *39-40 (D. Md. Mar. 18, 2019).

14. The primary purpose of LVNV's business, and LVNV's principal purpose, is the collection of consumer debts. LVNV's website states:

> LVNV Funding LLC, ("LVNV") purchases portfolios of both domestic (U.S.) and international consumer debt owned by credit grantors including banks and finance companies, and by other debt buyers. As the new owner of any debt previously owned by another creditor, LVNV's name may appear on a customer's credit report or in a letter from a collection agency.

http://www.lvnvfunding.com/.

15. LVNV is also engaged in the business of a collection agency under Wisconsin law, in that it purchases and receives assignment of consumer debts that are in default at the time Crown acquires them.

16. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added). On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

17. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

18. LVNV is a "merchant" as defined in the WCA, as it has, or claims to have, taken assignment of Plaintiff's former consumer credit card account. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.").

19. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

20. The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

*See* https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/ (last accessed June 23, 2020).

21. LVNV uses both ordinary collection methods, such as collecting debts through mail and telephone communications, and also civil lawsuits, in its collection business.

22. LVNV is a "debt collector" as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

4

23. A company meeting the definition of a "debt collector" (here, LVNV) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf).

**FACTS**

24. On or about January 29, 2020, V&K mailed a debt collection letter to Plaintiff regarding an alleged debt owed to LVNV with an original creditor listed as "Synchrony Bank." A copy of this letter is attached to this complaint as Exhibit A.

25. Upon information and belief, the alleged debt referenced in Exhibit A was incurred by use of a credit card, used only for personal, family, or household purposes.

26. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

27. Upon information and belief, Exhibit A is a form debt collection letter, used by Defendants to attempt to collect alleged debts.

28. Exhibit A includes the following representation:

**PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

29. The reverse side of the debt collection letter attached to the complaint as Exhibit A, however, is a blank page.

30. The representation that "PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION" is thus false, deceptive, and misleading.

31. Confronted with a similar representation, a court in the Southern of District of New York stated:

5

> In this Court's view, a typical recipient of [the defendant's] communications could be left with any of several reasonable conclusions upon reading the letter. These include the following: (1) he could assume that he had not received the "important information" due to [the defendant's] printing or mailing error; (2) he could be unsure whether he had received the "important information," and thus might, for instance, call [the defendant] to inquire about his rights and repayment options; or (3) he could assume that [the defendant] had made a mistake and, in fact, the "important information" was on the separately enclosed page. [the defendant], of course, urges the third reading, and it is surely a reading at which a recipient could arrive. But it would be reasonable, too, to draw the other two readings. And under either, the consumer would be left unsure as to the nature and scope of his rights, whether to credit the validation notice, and whether he had received all the information he was intended to receive—and to which he was entitled. But under the statute, the consumer should not need to guess; information must be conveyed "clearly and effectively."

*Papetti v. Rawlings Fin. Servs.*, LLC, 121 F. Supp. 3d 340, 350 (S.D.N.Y. 2015).

32. Upon information and belief, the purpose of the representation "PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION" is to encourage the consumer to contact V&K by telephone, whereupon V&K could use aggressive and unconscionable high-pressure tactics to attempt to induce payments from the consumer. *See, e.g., DeGeorge v. Fin. Recovery Servs.*, No. 11-cv-4288, 2012 U.S. Dist. LEXIS 140966 (E.D. Penn. Sept. 28, 2012) (plaintiff stated claim that defendant engaged in unfair debt collection practices by sending letters that "required plaintiff to contact defendant to take advantage of a discount, thereby exposing plaintiff to additional pressures of in-person communication.").

33. Additionally, <u>Exhibit B</u> also includes the following settlement offers:

- ☐ Take advantage of a discount up to 40% off the current balance: Make a one-time payment on or before 3/20/2020
- ☐ Take advantage of a discount up to 30% off the current balance: Make three payments: 1st payment due by 3/20/2020, 2nd payment due by 4/20/2020, 3rd payment due by 5/20/2020
- ☐ Take advantage of a discount up to 20% off the current balance: Make six payments: 1st payment due by 3/20/2020, 2nd payment due by 4/20/2020, 3rd payment due by 5/20/2020, 4th payment due by 6/20/2020, 5th payment due by 7/20/2020, 6th payment due by 8/20/2020
- ☐ Take advantage of paying your balance off in nine payments: 1st payment due by 3/20/2020, 2nd payment due by 4/20/2020, 3rd payment due by 5/20/2020, 4th payment due by 6/20/2020, 5th payment due by 7/20/2020, 6th payment due by 8/20/2020, 7th payment due by 9/20/2020, 8th payment due by 10/20/2020, 9th payment due by 11/20/2020

Please call 800-462-4884 within 10 days to secure one of the above options. Upon securing one of the above options, we will notify our client that a satisfactory arrangement has been made to settle the above debt.

34. Exhibit B also states:

> Any payments or credits in excess of the agreed settlement amount will be applied against the account's outstanding balance.

35. Exhibit B is misleading and confusing to the unsophisticated consumer.

36. The normal meaning of "settling" a debt means that the debt is permanently resolved in exchange for a payment of a portion of the balance.

37. If a consumer and the debt collector agree to settle a debt for a portion of the balance, in this case by paying 60, 70 or 80 percent of the full balance, the settlement amount becomes the full amount of the debt. There is no longer any "outstanding balance."

38. Defendants' statement that additional amounts paid will be "applied against the account's outstanding balance" conflicts with the offer to settle the debt for a reduced amount.

39. As a matter of contract law, Defendants would be obligated to return any overpayment to a consumer who accepted one of the settlement offers for less than the full balance identified in Exhibit B, rather than just pocketing the excess amount. The unsophisticated consumer is not expected to know that detail.

40. A consumer who accepted and paid the amounts in the first, second, or third settlement offers on Exhibit B would not know whether the debt was actually "settled" or if there is still an "outstanding balance" on the account.

41. The consequences of misleading a consumer with respect to settling a debt are greater than misleading the consumer about the amount of the debt. In this circumstance, the consumer could make the "settlement" payment but LVNV may still report the remainder of the full balance of the account as unpaid. Such reporting would have a more negative effect on the consumer's creditworthiness (as measured by "credit scores") than payment in full or a true settlement in which a zero balance is all that remains.

7

42. Whether a payment would actually settle the debt is, by definition, a material term of a settlement offer and must be communicated clearly and effectively. *E.g., Nichols v. Northland Groups, Inc.*, 2006 U.S. Dist. LEXIS 15037, at *19 (N.D. Ill. Mar. 31, 2006) ("Requiring a clear statement of the settlement proposal, including the method by which the settlement amount is calculated, will not interfere with the debt collector's freedom to negotiate."); *Al v. Van Ru Credit Corp.*, 2018 U.S. Dist. LEXIS 70321, at *7-8 (E.D. Wis. Apr. 26, 2018) (discussing settlement offers and observing that, "Where the FDCPA requires clarity … ambiguity itself can prove a violation.") (quoting *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 686-87 (7th Cir. 2017)); *see also, Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, at *13 (W.D. Okla. Mar. 30, 2017) (collection letter violated the FDCPA because "[a]ny consumer receiving the first letter would be left to wonder about a material term of the offer[.]"); *Dixon v. Law Office of J. Scott Watson P.C.*, 2018 U.S. Dist. LEXIS 18184, at *10-11 (E.D. Penn. Feb. 5, 2018) (settlement offer that specified initial installment amounts but left open the amount of later installments potentially violated the FDCPA), *cross motions for summary judgment denied by, Dixon v. Scott*, 2018 U.S. Dist. LEXIS 133076.

43. Plaintiff misled and confused by <u>Exhibits A and B</u>.

44. The unsophisticated consumer would be misled and confused by <u>Exhibits A and B</u>.

### ***The FDCPA***

45. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Messerli & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of

8

injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA

9

statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

46. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

47. Plaintiffs who allege that debt collectors engaged in misrepresentations in their dunning letters have standing, as such misrepresentations risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt.*, No. 18-

10

CV-1484, 2019 U.S. Dist. LEXIS 134377 *8-9 (E.D. Wis. Aug. 9, 2019) ("Protecting consumers from misinformation is one of the 'concrete interest[s] that Congress sought to protect,' under the FDCPA. If a consumer is misinformed, rather than merely uninformed, the risk of harm is greater.") (internal citations omitted); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

48. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

49. 15 U.S.C. § 1692e(2)(A) specifically prohibits "the character, amount, or legal status of any debt."

50. 15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

51. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

52. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

53. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

54. 15 U.S.C. § 1692g(a) provides that

> (a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt.

### *The WCA*

55. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

56. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

57. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

58. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

59. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

60. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

61. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

62. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

## COUNT I - FDCPA

63. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

64. By stating "PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION" where the reverse side of the debt collection letter is actually blank, Exhibit A includes representations which are false, deceptive, and misleading the unsophisticated consumer.

65. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f.

## COUNT II – FDCPA

66. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

67. Exhibit B includes representations which are false, deceptive, and misleading because if a consumer accepts one of the settlement offers included in Exhibit B, there would be no "outstanding account balance" to which to apply excess payment amounts.

68. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f and 1692f(1).

## COUNT III – WCA

69. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

70. Exhibit B includes representations which are false, deceptive, and misleading because if a consumer accepts one of the settlement offers included in Exhibit B, there would be no "outstanding account balance" to which to apply excess payment amounts.

71. Defendants violated Wis. Stat. § 427.104(1)(j).

## CLASS ALLEGATIONS

72. Plaintiff brings this action on behalf of two prospective classes.

73. Class I consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the Complaint in this action, (c) seeking to collect a debt incurred for personal, family, or household purposes, (d) between July 7, 2019 and July 7, 2020, inclusive, and (e) was not returned by the postal service.

74. Class II consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit B</u> to the Complaint in this action, (c) seeking to collect a debt incurred for personal, family, or household purposes, (d) between July 7, 2019 and July 7, 2020, inclusive, and (e) was not returned by the postal service.

75. Each class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

76. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common questions are whether Defendants complied with the FDCPA and the WCA.

77. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

78. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

79. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

80. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: July 7, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

16